08 CV 5483

Michael J. Frevola
Lissa D. Schaupp
HOLLAND & KNIGHT LLP
195 Broadway
New York, NY 10007-3189
(212) 513-3200

ATTORNEYS FOR PLAINTIFF
CASTLE HOLDINGS LLC



RECEIVED
JUN 17 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CASTLE HOLDINGS LLC,

                Plaintiff,

        -against-

GOLD STREAM SHIPPING CO. LTD.,

                Defendant.

08 Civ. _____

**VERIFIED
COMPLAINT**

---

       Plaintiff, Castle Holdings LLC ("Castle" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its verified complaint against Gold Stream Shipping Co. Ltd. ("Gold Stream" or "Defendant"), alleges, upon information and belief, as follows:

       1.     This is a case of admiralty and maritime jurisdiction as hereinafter more fully appears and is a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

       2.     At all times material herein, Castle is and was a business entity organized and existing under the laws of a foreign state with its principal place of business at 15 Tenistaya str. of.4, 65009 Odessa, Ukraine.

3.      Upon information and belief, at all times material herein, defendant Gold Stream is and was a business entity organized and existing under the laws of a foreign state with its principal place of business at 97 Granby str. suite 207, Kingstown, St. Vincent & Grenadines.

4.      On or about April 16, 2007, Castle and Gold Stream entered into a contract whereby Castle agreed to perform certain repairs to a vessel which at that time was named GS PARTNER ("Vessel") and was owned by Gold Stream ("Repair Contract").  A true and correct copy of the Repair Contract is annexed hereto as Exhibit 1.

5.      Under Clause 8 of the Repair Contract if the Customer, here Gold Stream, is late in making a payment:

> the Customer pays to the Contractor [Castle] the fine at a rate of
> 0,1% per every day of delay from the sum delayed payment, but no
> more than 10% from the price of the Contract.

6.      Under Clause 10 of the Repair Contract, all disputes arising under the Repair Contract are subject to resolution by the International Commercial Tribunal of Chamber of Commerce and Industry of Ukraine with the application of Ukrainian law.

7.      The Vessel was delivered to Castle on or about April 26, 2007 in order for it to perform the repairs contemplated by the parties in the Repair Contract.

8.      Castle's repair work on the Vessel was completed, and the Vessel was re-delivered to Gold Stream on or about June 13, 2007.

9.      The parties agreed to a schedule of payments setting forth the dates on which Gold Stream would make installments payments to Castle for the monies it owed Castle under

the Repair Contract ("Schedule of Payments"). A true and correct copy of the Schedule of Payments and a document containing its English translation is annexed hereto as Exhibit 2.

10.    Gold Stream made the first payment on time, but was slightly late with the second and third payments. Although there are no signatures for the fourth payment indicated on the Schedule of Payments, Gold Stream made the fourth payment.

11.    Gold Stream has failed to make the fifth and sixth payments, which total US$63,364.00. According to the Schedule of Payments, the fifth payment was due on July 15, 2007, and the sixth payment was due on August 15, 2007. (Exhibit 2).

12.    Accordingly, Gold Stream is in breach of both the Repair Contract and the parties' Schedule of Payments agreement for failing to make the second and third payments on time, and for failing to make the fifth and sixth payments to Castle in their entirety.

13.    Under the Repair Contract Castle is entitled to late penalties for Gold Stream's delayed payments, which are significant in the case of the fifth and sixth payments.

14.    Under Clause 8 of the Repair Contract, Castle is entitled to US$31.68 per day for each day the fifth and sixth payments are late.

15.    The fifth payment was due August 15, 2007, and is therefore, currently 305 days late, which equals a late penalty of US$9,662.40. The sixth payment was due on September 15, 2007, and is therefore, currently 274 days late, which equals a late penalty of US$8,680.32. The total penalties for the delay of the fifth and sixth payments to date total US$18,342.72.

3

16.    However, it is estimated that it will take two years to resolve this matter. During this time frame, the late penalties due to Castle will reach the contractual limit of $31,282.00, which is 10% of the contract price.

17.    Castle also incurred costs in association with two trips of the surveyor, Mr. Atanasov, who carried out surveys aboard the Vessel after Castle's repair in the amount of EUR6,595.30, which is for Gold Stream's account. True and correct copies of the surveyor's statements of costs with their English translations are annexed hereto as Exhibit 3. At the current rate of exchange, EUR6,595.30 is equivalent to US$10,258.99.

18.    The Repair Contract is governed by Ukraine law, which makes a reasonable allowance for attorney's fees for the prevailing party.

19.    In accordance with Clause 10 of the Repair Contract Castle has commenced arbitration proceedings at the International Commercial Tribunal of Chamber of Commerce and Industry of Ukraine in the fall of 2007. Castle's claim submissions have not yet been served on Gold Stream because it was not found at its purported address. The Ukrainian arbitration tribunal has stayed arbitration proceedings until Gold Stream can be located.

20.    Based on the preceding, Castle's claim against Gold Stream is for the following:

| | |
|---|---|
| Fifth and sixth payments: | $ 63,364.00 |
| Late fee (contractual limit): | $ 31,682.00 |
| Surveyor's Costs: | $ 10,258.99 |
| Principal claim: | $105,304.99 |
| Interest on principal claim:<br>($105,304.99 at 5% for two years) | $ 10,530.50 |

4

Attorneys' fees:_____    $ 50,000.00

**TOTAL AMOUNT SOUGHT:**        **US$165,835.49**

21.    Gold Stream is not found within the Southern District of New York but does have assets, good or chattels within the jurisdiction, to wit: funds or accounts held in the name of Gold Stream with, upon information and belief, the following financial institutions:  Bank of America, N.A.; The Bank of New York; Citibank, N.A.; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; UBS AG; Wachovia Bank, N.A.; Société Générale; Standard Chartered Bank; BNP Paribas; Calyon Investment Bank; American Express Bank; Commerzbank; ABN Amro Bank; Bank Leumi USA; Banco Popular; or any other financial institution within the Southern District of New York.

22.    While all disputes arising out of the Repair Contract are to be arbitrated in the Ukraine, the action herein is submitted in accordance with Rule B of the Supplemental Rules of Certain Admiralty Claims of the Federal Rules of Civil Procedure, as well as 9 U.S.C. § 8, and is not and cannot be considered a waiver of the parties' agreement to arbitrate.

    **WHEREFORE**, Castle Holdings LLC prays:

1.    That a summons with process of attachment and garnishment may issue against the defendant, Gold Stream Shipping Co. Ltd.; and if defendant cannot be found, then that its goods, chattels and credits within the district, and particularly all bank accounts and other property of Gold Stream Shipping Co. Ltd. with the financial institutions noted above in paragraph 21, may be attached in an amount sufficient to answer plaintiff's claim;

2.      That defendant Gold Stream Shipping Co. Ltd. and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3.      That judgment be entered in favor of Castle Holdings LLC and against Gold Stream Shipping Co. Ltd. in the amount of US$165,835.49 (including estimated interest and attorneys' fees); and,

4.      That this Court grant Castle Holdings LLC such other and further relief which it may deem just and proper.

Dated: New York, New York
June 17, 2008

HOLLAND & KNIGHT LLP

By:  _____
Michael J. Frevola
Lissa Schaupp
195 Broadway
New York, NY 10007-3189
Tel:     (212) 513-3200
Fax:     (212) 385-9010

*Attorneys for Plaintiff*
*Castle Holdings LLC*

## VERIFICATION

STATE OF NEW YORK        )

                                  :ss.:

COUNTY OF NEW YORK      )

MICHAEL J. FREVOLA, being duly sworn, deposes and says:

I am a member of the firm of Holland & Knight LLP, counsel for Castle Holdings LLC ("Castle"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true and correct to the best of my knowledge. I have reviewed documentation provided to me by Castle and corresponded with Castle's representatives regarding this matter. I am authorized by Castle to make this verification, and the reason for my making it as opposed to an officer or director of Castle is that there are none within the jurisdiction of this Honorable Court.

_____
Michael J. Frevola

Sworn to before me this
17th day of June, 2008

_____
Notary Public

Elvin Ramos
Notary Public, State of New York
NO. 01RA4870243
Qualified in Queens County
Certificate filed in New York County
Commission Expires September 2, 2010

# 5398804_v1

7

# EXHIBIT 1

| КОНТРАКТ № 2603/2007 | CONTRACT № 2603/2007 |
|---|---|

**16 апреля 2007 г.**                 Керчь

Компания " Gold Stream Shipping Co. Ltd ", в лице директора M.G.Kocharyan здесь и далее именуемая «Заказчик», с одной стороны и компания "Castle Holdings LLC", США, в лице директора Е. Хадживангели, здесь и далее именуемая «Исполнитель», с другой стороны, заключили настоящий Контракт о нижеследующем:

### 1. Предмет Контракта

Заказчик обеспечивает постановку на ремонт судна «GS PARTNER» в ОАО «Судостроительный завод «Залив» до 26.04.2007 ± 5 дней, а Исполнитель принимает на себя обязательства по ремонту судна «GS PARTNER».
Условия поставки судна CIF-Керчь.

### 2. Стоимость ремонта

**2.1.** Стоимость ремонта определяется на основании Предварительной ремонтной ведомости (Приложение № 1 к Контракту), которая подписывается обеими сторонами на момент заключения Контракта.
**2.2** Общая окончательная цена Контракта определяется Окончательной ремонтной ведомостью (Приложение №3 к Контракту).

### 3. Технические условия Контракта

**3.1.** Весь ЗИП и материалы, используемые для ремонта, очистки и окраски судна – поставка Заказчика или Судовладельца, как это отражено в Предварительной ведомости.

**3.2.** Ремонт судна производится в соответствии с технической документацией, предоставленной Заказчиком и/или технической документацией, разработанной Исполнителем по указанию Заказчика и согласованной с ним.

**3.3.** Ремонт судна производится под наблюдением ОТК Исполнителя, уполномоченных представителей Классификационного общества и Заказчика. Расходы по наблюдению за ремонтом и приемкой работ классификационным обществом оплачивается Заказчиком, и в цену ремонта не включаются.

**3.4.** Одновременно с согласованием срока завершения ремонта стороны утверждают объемы и сроки поставки Заказчиком ЗИПа и материалов необходимых для ремонта.

В случае задержки поставок ЗИПа Заказчиком, продолжительность ремонта судна увеличивается на срок задержки, в случае, если поставленный ЗИП влияет на продолжительность ремонта.

---

**16 of April 2007**                 Kerch

Company "Gold Stream Shipping Co. Ltd", in a person of director M.G.Kocharyan , hereinafter referred to as the "Customer", on the one side, and company "Castle Holdings LLC", USA, in a person of director E. Hadjivangeli, hereinafter referred to as the "Contractor" on the other side have concluded the present Contract as for the following:

### 1. Subject of the Contract

Customer undertakes to bring for repair m/v « GS PARTNER » to JSC shipyard "Zaliv" till 26.04.2007 ± 5 days and Contractor undertakes to carry out repair of m/v « GS PARTNER ».

Vessel's delivery term – CIF-Kerch.

### 2. Price of the repair

**2.1.** The price of the repair determine according the Preliminary Repair Specification (Attachment №1 to the Contract), which signing by both sides.

**2.2** The final total Contract price to be stated by the Final Repair Specification (Attachment №3 to the Contract).

### 3. Technical terms of the Contract

**3.1** All spare parts & materials, necessary for vessel's repair, blasting & painting – Customer or Owners supply.

**3.2.** Repair of the vessel is to be carried out according to the technical documentation submitted by Customer and/or technical documentation worked out by Contractor & agreed with Customer.

**3.3.** Repair of the vessel is to be carried out under supervision of Contractor's Quality Control Department, authorized representatives of Classification Society and Customer. The charges for supervision over repair and taking-over of works by a classification society are paid by the Customer and in the price of repair are not included.

**3.4.** The Parties should coordinate dates and scope for Customer to supply spares and materials required for repair simultaneously with coordination of repair completion time.

In case of delay in spare parts delivery by the Customer, the duration of repair of a vessel is increased for the term of a delay, if supplied spares influence on total repair term.

3.5 Заказчик нанимает агентирующую фирму, которая представляет интересы Заказчика на Украине и решает с таможенными властями все вопросы по оформлению запчастей, материалов, снабжения и грузов. Все расходы по таможенным процедурам, при оформлении запчастей, материалов, снабжения и грузов оплачивает Заказчик.

3.6. Исполнитель несет ответственность за безопасное проведение работ по согласованным ремонтным ведомостям, а так же за сохранность имущества и оборудования судна, задействованных в ремонте.

3.7. Заказчик и капитан судна несут ответственность за:
- сохранность судового имущества и оборудования, не задействованных в ремонте.
- безопасное выполнение работ, выполняемых, по предварительному согласованию с Исполнителем, экипажем судна и/или третьими компаниями/лицами.

3.8. Испытания, предусмотренные Заявленной и Исполнительной ремонтными ведомостями должны проводиться в соответствии с Программой испытаний, представленной Заказчиком и согласованной с Исполнителем, либо разработанной Исполнителем по указанию Заказчика и одобренной им.

3.9. Результаты всех испытаний и обмеров Исполнитель представляет Заказчику в виде сертификатов, утвержденных ОТК Исполнителя.

3.10. Каждую завершенную работу и/или услугу Исполнитель представляет Заказчику на подтверждение/одобрение в письменной форме с указанием фактически выполненного объема, даты завершения и стоимости.

3.11. Материалы запчасти и механизмы, поступающие в ремонт на борту судна, как поставка Заказчика должны быть укомплектованы и сопровождаться упаковочным листом с весом каждой позиции, Коносаментом от Заказчика, а так же инвойсом на ЗИП и материалы от Заказчика. В случае отсутствия указанных документов на момент прихода судна в ремонт, задержки, связанные с таможенным оформлением поступивших грузов и, соответственно, задержки в сроках начала ремонтных работ не включаются в общий срок ремонтных работ по судну.

В случае поставки материалов, запчастей и механизмов автотранспортом, вместе с грузом должны быть поставлены:
· Инвойс-проформа
· CMR
· Упаковочный лист
Для избежания простоя транспорта на границе, для оформления проезда Заказчик должен направить факсом или электронной почтой за два дня до прихода

---

3.5 The Customer employs agency firm, which represents interests of the Owners on the Ukraine and decides with customs authorities all questions on registration of spare parts, materials, supply & cargoes. The Customer pay all charges on customs formalities rather declare of spare parts, materials, supply & cargoes.

3.6. Contractor undertakes responsibility for safe performance of works outlined by the agreed repair specifications as well as for ship's property and equipment that are involved in repairs.

3.7. Customer and captain of the vessel undertake responsibility for:
- safekeeping of ship's property and equipment that are not involved in repairs.
- for safe performance of works that are to be carried out by crew and/or third companies/persons under preliminary agreement with Contractor.

3.8. Tests prescribed by Declared Repair Specification and Executive Repair Specification should be performed according to the Program submitted by Customer and agreed with Contractor or worked out by Contractor under Customer's order and approved by them.

3.9. Contractor is to submit results of all tests and measurements to Customer in form of Certificates approved by Contractor's Quality Control Department

3.10. Contractor is to submit every completed work and/or service in written form to Customer for confirmation/approval with actual performed scope and date of completion stated in.

3.11. The materials, spare parts and mechanisms acting in repair onboard a vessel, as delivery of the Customer should be completed and be accompanied by a packing sheet with weight of each position, Conosament from the Customer, and as invoice on spare parts and materials from the Customer. In case of absence of the specified documents on the moment of arrival of a vessel for repair, delays connected to customs registration of arrived cargoes and, accordingly, the delays in terms of a beginning of repair work are not included in general term of repair of vessel.

In case of delivery of materials, spare parts and mechanisms by trucking, together with a cargo should be put:
· a invoice-proforma
· CMR
· a Packing sheet
For avoidance of transport idle time on border, for registration of travel the Customer should direct by fax or email two days, prior to arrival of the

2

машины к границе следующие документы:
· Инвойс-проформа
· CMR
· Упаковочный лист
· Сообщить пункт-пропуск пересечения границы Украины.

Все документы должны быть оформлены от имени Судовладельца или уполномоченной им фирмы (с представлением необходимых документов).

### 4. Наблюдение за ходом работ

4.1. Представителями Заказчика, ведущими надзор за ремонтом, назначены суперинтенданты:

### Б. ЯГШИЕВ

4.2. Назначенный представитель полностью уполномочен Заказчиком принимать решения по организационным, техническим и финансовым вопросам, возникающим при ремонте Судна, а также подписывать соответствующие документы.

### 5. Дополнительные работы и услуги

5.1. Любая работа и/или услуга, не указанная Заказчиком в его Предварительной ремонтной спецификации с указанием объема и/или количества, и не рассматривавшаяся сторонами в процессе предконтрактных переговоров в части определения общего срока ремонта, считается дополнительной.

5.2. Если Заказчик требует у Исполнителя выполнения какой-либо дополнительной работы и/или услуги, то он обязан представить Исполнителю письменный запрос в согласованной форме.

5.3. Исполнитель приступает к выполнению дополнительной работы и/или услуги только после согласования с Заказчиком её цены, объема и срока в утвержденной сторонами форме.

5.4. Если в ходе ремонта Заказчик требует увеличить предварительно заявленные объемы работ и/или услуг, что может повлиять на согласованный срок ремонта (статья 6), то Исполнитель вправе требовать увеличения продолжительности ремонта, что согласовывается в письменной форме.

5.5. Все работы и/или услуги Предварительной ремонтной ведомости, а так же дополнительные работы и/или услуги, выполненные в ходе ремонта, заносятся в Окончательную ремонтную ведомость с указанием фактически выполненного объема и окончательной согласованной цены.

5.6. Заказчик имеет право выполнять во время стоянки судна у заводского причала/в доке ремонтные работы силами судового экипажа, своих специалистов, сервисных инженеров фирм-изготовителей судового оборудования. В этом случае вопросы выполнения таких работ обсуждаются с Исполнителем, чтобы исключить их негативное влияние на выполнение работ Исполнителем. Оборудование и материалы,

machine to border the following documents:
· invoice-proforma
· CMR
· Packing sheet
· To inform the item - miss of crossing of border of Ukraine.

All documents should be made out on behalf of the Shipowner or firm, authorized by him (with performance of the necessary documents).

### 4. Supervision of work

4.1. The Customer's Representatives to supervise the work are superintendents:

### B.YAGSHIEV

4.2. The appointed Representative is fully authorized by Customer to make any managerial, technical or financial decision required concerning repair of the Vessel and to sign appropriate documents.

### 5. Additional works and services.

5.1. Any work and/or service that were not required by Owners in their Preliminary Repair Specification and were not considered by Parties during preliminary negotiations to estimate total repair time, is to be considered as additional one.

5.2. If Customer requires any additional work and/or service to be performed it should be submitted to the Contractor in agreed written form.

5.3. The Contractor is to commence execution of additional work and/or service only upon mutual agreement as for the price, scope, and time in agreed written form.

5.4. If in the course of repair Customer requires to increase preliminary specified scopes of works and/or services and this may influence agreed period of repair (article 6), then Contractor reserve the right to prolong period of repair and that is to be agreed in written.

5.5. All works and/or services as per Preliminary Repair Specification as well as additional works and/or services carried out in the repair process to be included in Final Repair Specification with description of actual scope done and final agreed price.

5.6. The Customer has the right to carry out during wharfage of a vessel at the Yard dock to carry out repair work by forces of ship crew, the experts, service engineers of firms - manufacturers of the ship equipment. In this case questions of performance of such works are discussed with the Contractor to exclude their negative influence on performance of works by the Contractor. Spares &

3

ввозимые субконтракторами и сервисными инженерами, должны быть предъявлены и заявляться/оформляться соответствующим образом Заводом

5.7. Заказчик ни при каких условиях не согласится выплачивать Исполнителю какие-либо суммы за получение разрешения на выполнение на судне ремонтных работ, указанных в п. 5.6. Единственное условие, принимаемое Заказчиком - выполнение этих работ не должно мешать выполнению работ Исполнителем.

5.8. Заказчик в процессе ремонта сообщит Исполнителю о своем намерении привлечь для выполнения ремонтных работ своих специалистов, сервисных инженеров.

5.9. Субподрядчики привлекаются Заказчиком по согласованию с Исполнителем на те работы, которые не могут быть выполнены Исполнителем по техническим возможностям, либо в установленные сроки ремонта.

### 6. Срок ремонта

6.1. Продолжительность ремонта в соответствии с настоящим Контрактом устанавливается после окончательного согласования ремонтной ведомости в течение 5 календарных дней после приемки судна в ремонт, учитывает проведение ремонта при благоприятных погодных условиях и понимается как время, необходимое Исполнителю для выполнения его обязательств по Контракту.

Дополнения и изменения предварительной ремонтной ведомости принимаются в течение 5 календарных дней после постановки судна в ремонт. После этого срока дополнения к согласованной ремонтной ведомости Исполнителем принимаются на свое усмотрение, учитывая их влияние на продолжительность ремонта.

6.2. Судно считается находящимся в ремонте у Исполнителя с момента подписания обеими сторонами «Акта приема судна в ремонт», в котором указывается первый день ремонта судна.

6.3. Первым днем ремонта является день прихода судна на завод, если таможенные формальности были закончены до 12-00, либо следующий день, если таможенные формальности закончены после 12-00.

6.4. Исполнитель вправе требовать увеличения согласованного срока ремонта в случае неблагоприятных погодных условий, задержки ЗИПа, форс-мажорных и/или других обстоятельств, влияющих на продолжительность ремонта, как указано в статье 12 Контракта.

6.5. По завершении всех работ и испытаний, предусмотренных Исполнительной ремонтной ведомостью, стороны подписывают «Приемо-сдаточный акт» с указанием даты окончания ремонта.

Подписание акта является подтверждением завершения ремонта в согласованном объеме, в полном

units, delivered by subcontractors & services engineers must be presented & declared/arranged by the Yard

5.7. The Customer under any conditions will not agree to pay to the Contractor any sums for reception of the sanction to performance on a vessel of the repair work specified in item 5.6. The unique condition accepted by the Customer - performance of these works should not prevent performance of works by the Contractor.

5.8. The customer during repair will inform the contractor about the intention to involve for performance of repair work of the experts, service engineers

5.9. Subcontractors are involved by the Customer as agreed with the Contractor for those works, which cannot be executed by the Contractor through technical opportunities, or in target dates of repair.

### 6. Period of repair

6.1. Period of repair as per the present Contract will be determined after final agreement concerning repair specification during 5 running days after vessel would be taken for repair, taking into account weather permitting, and understood as the time Contractor needs to fulfill his Contract obligations.

Additional works and changes of preliminary repair specification should be concluded during 5 running days after vessel to be taken for repair. After that Contractor will decide by its own to take any additional works to agreed repair specification taking into account their influence on the repair term.

6.2. The vessel is to be considered under repair from "Transfer Certificate" signing by both Parties, where the first day of repair to count is to be stated

6.3. The first day of repair understands as the day of vessel arrival to "ZALIV" Shipyard, if customer formalities have been completed upon 12-00 am. Or next day, if formalities have been completed after 12-00 am.

6.4. Contractor has right to require prolongation for the agreed period of repair in case of unfavorable weather conditions, Force-major circumstances and/or other circumstances influencing on period of repair as per clause 12 of the Contract

6.5. Upon completion of all works and tests prescribed in Executive Repair Specification, Parties are to sign "Delivery Certificate" and specify the date of repair completion in.

Signing of this certificate is the confirmation that a repair is successfully completed in agreed

4

соответствии с настоящим Контрактом и к удовлетворению Классификационного Общества и Заказчика.

**7. Штрафные санкции.**

**7.1.** В случае задержки ремонта судна по вине Исполнителя, что подтверждено обеими сторонами, Исполнитель выплачивает Заказчику штраф в размере **2000 долларов США** за каждый день задержки, но не более **10 %** от окончательной стоимости ремонта.

**8. Условия платежей**

Платежи за ремонт в соответствии с настоящим Контрактом Заказчик переводит на счет Исполнителя в долларах США следующим образом:

**30% суммы предварительной ремонтной ведомости** - в течение 3-х дней с момента подписания акта приемки судна на ремонт;

**40%** разницы между суммой исполнительной ремонтной ведомости (ИРВ) и выплаченной суммой - до выхода судна из ремонта;

оставшуюся разницу между выплаченной суммой и суммой ИРВ - тремя платежами равными долями в течение 30, 60 и 90 дней после выхода судна из ремонта.

За несвоевременную оплату счетов Заказчик уплачивает Исполнителю пеню в размере 0,1% за каждый день просрочки от суммы неоплаты, но не более 10% от цены Контракта.

**9. Страхование**

Исполнитель не несет ответственность за страхование судна, экипажа, представителей Заказчика и Классификационного Общества.

**10. Арбитраж**

**10.1.** Все разногласия, которые могут возникнуть в связи с настоящим Контрактом должны разрешаться путем переговоров сторон.

Все споры, вытекающие из этого контракта, будут рассматриваться международным коммерческим судом при торгово-промышленной палате Украины.

**10.2.** Заключение арбитража окончательно и безапелляционно для обеих Сторон.

При рассмотрении споров применяется украинское законодательство.

**11. Форс-мажор**

**11.1.** Непредвиденные обстоятельства форс-мажорного характера, как-то: пожар, наводнение, землетрясение и другие стихийные бедствия, дождь, снег, ветер более 12 м/сек за которые Исполнитель не несет ответственности, отодвигают соразмерно срок выхода Судна из ремонта лишь в том случае, если эти обстоятельства будут оказывать значительное влияние на своевременное выполнение Контракта и, если Заказчик будет немедленно, но не позднее 2 дней от даты их наступления, извещен Исполнителем в письменной форме о наступлении этих обстоятельств.

**11.2.** К обстоятельствам форс-мажора относятся любые виды запрета в проведении очистных и окрасочных работ сделанные в письменной форме

scope, full conformity with the present Contract and to satisfaction of Classification Society and Owners.

**7. Penalty.**

**7.1.** In case of delay, that is to be confirmed by both Parties, Contractor is to pay the penalty to Customer at the rate of USD 2 000 per day of delay caused by Contractor, but total penalty amount is not to be more than 10 % of total final agreed repair cost.

**8. Terms of payments**

Payments for repair according to the present Contract are to be effected by Customer in US dollars to Contractor's bank account as follows:

30% of Preliminary Repair Specification amount – within 3 days from the date of Acceptance Protocol signing;

40% of difference between the amount of Final Repair Specification and paid-up amount – till the vessel's departure;

remained difference between paid-up amount and the amount of Final Repair Specification – with three payments by equal parts within 30, 60 and 90 days after vessel's departure.

For delayed payment the Customer pays to the Contractor the fine at a rate of 0,1 % per every day of delay from the sum delayed payment, but no more than 10 % from the price of the Contract.

**9. Insurance**

The Contractor is not responsible for insurance of vessel, crew and Owners and Classification Society representatives.

**10. Arbitrage**

**10.1.** All disputes and differences that may arise out of or in connection with the present Contract should be settled by Parties' negotiations.

All of disputes regarding this Contract should be agreed by International Commercial tribunal of Chamber of Commerce and Industry of Ukraine.

**10.2.** The arbitration award is final and binding for both Parties.

In case of adjudication the Ukrainian low will be applied.

**11. Force - Major**

**11.1.** Unforeseen circumstances involving force-major, such as fire, flood, earthquake and other calamities, as the snow, rain and wind more 12 m/sec which are beyond the Contractor's control, will be eligible for an equivalent extension of the Vessel repair period provided in case only that such circumstances have a significant effect on contract completion, and in case that the Customer is immediately informed by the Contractor in writing, but not later than 2 days after the onset of such circumstances.

**11.2.** Any kinds of an interdiction in cleaning and painting of works realization made in writing by inspector on painting concern to circumstances force-

инспектором по окраске. Таковыми могут быть повышенная вязкость или свойства краски, которая не может быть нанесена в данных условиях и температуре. Эти требования также соразмерено влияют на срок ремонта судна.

11.3 Несвоевременное извещение форс-мажорных обстоятельств лишает Исполнителя права ссылаться на них.

11.4 Исполнитель обязан также известить Заказчика в 2-х дневный срок в письменной форме о прекращении действия препятствий форс-мажорного характера

## 12. Общие условия

12.1. Контракт вступает в силу с момента его подписания обеими сторонами и действует до 25 декабря 2007 года.

12.2. Любые изменения и/или дополнения к Контракту действительны только тогда, когда они выполнены в письменной форме и подписаны обеими сторонами.

12.3. Настоящий Контракт выполнен в двух экземплярах на русском и английском языках каждый. Оба текста имеют равную силу.

12.4. Исполнитель оставляет за собой право нанимать субподрядчиков для выполнения работ, оказания услуг и поставку материалов в соответствии с Контрактом.
Исполнитель несет полную ответственность за качество работ, выполненных субподрядчиками, нанятыми Заводом, за материалы, поставленные ими, а также за соблюдение ими остальных условий Контракта.

12.5. Исполнитель обязан представить Заказчику проект Окончательной ремонтной ведомости не позже, чем за 3 дня до отхода судна. Окончательная ремонтная ведомость должна быть согласована и подписана обеими сторонами до ухода судна.

12.6. В случае смены владельцев судна до окончания действия настоящего Контракта, завершение выполнения контрактных обязательств остается за Заказчиком по настоящему Контракту.

12.7. Исполнитель принимает на себя гарантийные обязательства по выполненным им работам в течение 6 месяцев при условии надлежащей эксплуатации.

12.8. Банковские расходы по переводу платежей по настоящему Контракту берет на себя Исполнитель.

12.9 Стороны договорились, что печать судна имеет юридическую силу для подписания документов, касающихся данного контракта.

major. By those can to be the high humidity, raised viscosity or properties of a paint, which cannot be put in the given conditions and temperature. These requirements also equivalent extension the repair period for the Vessel

11.3 Failure to give timely warning of force-major conditions shall deprive the Contractor of the right to make claims in respect of such matters

11.4 The Contractor shall also undertake to inform the Customer in writing within 2 days of the termination of the force-major condition.

## 12. General terms

12.1 Present Contract is to be in force from its signing by both Parties and remaining to be valid until 25th of December 2007.

12.2. Any alterations and/or addenda to the Contract are valid only when made in written and signed by both Parties.

12.3. The present Contract is made in two copies in the Russian and English each. Both texts are equally valid.

12.4. Contractor reserves the right to employ subcontractors to perform works, furnish services and supply materials in accordance with the Contract.
Contractor undertakes full responsibility for quality of works performed by his subcontractors employed by the Yard for materials supplied by them as well as for observation of other Contract terms/conditions by them.

12.5. Contractor is to submit a draft of Final Repair Specification to Customer not later than 3 days before vessel departure. Final Repair Specification is to be agreed and signed by both Parties before vessel departure.

12.6. In case the vessel's owners change before present Contract completed, Customer as per the present Contract is responsible for completion of present Contract obligations.

12.7. The Contractor furnishes a security for works carried out by it during 6 month in case of proper exploitation.

12.8. Bank expenses for remittance of payments under the present Contract to be borne by Contractor.

12.9 Parties agreed, that vessel's stamp has juridical power on any documents signing concerning this Contract.

| | |
|---|---|
| Юридические адреса и банковские реквизиты сторон | Legal addresses and bank details of the Parties |

Адрес Исполнителя:

8 Kennedy Ave., Office 101, P O. BOX 26557,
CY-1640 Nicosia, Cyprus

Банковские реквизиты Исполнителя:

Beneficiary's Bank  NORDEA BANK DANMARK A/S,
DENMARK
IBAN· DK 12 2000 5005 8394 05
S W I F.T  address  NDEADKKK

Customer address:

Gold Stream Shipping Ltd
97 Granby str., suit 207, Kingstown, St Vincent
& Grenadines

Customer bank details:

GOLD STREAM SHIPPING Co Ltd,
ACCOUNT USD No· 206 263.893.60E
IBAN USD: CH80 0020 6206 2638 9360E
BANK  UBSAGZURICH, SWITZERLAND

On behalf of Contractor:

E. Hadjivangeli

Director of
' Castle Holdings LLC"

On behalf of Customer:

M.G.Kocharyan

Director of
Gold Stream Shipping Co  Ltd"

7

# EXHIBIT 2

### ГРАФИК ПЛАТЕЖЕЙ ПО РЕМОНТНОЙ ВЕДОМОСТИ

### ПО   Т/Х "ГС ПАРТНЕР"

Контракт № 2603/2007  от 16 апреля 2007 г.

В заводе "Залив" п.Керчь

Стоимость по рем. Ведомости :      $ 316 820.00

| n/n | Дата платежа | Сумма платежа | Дата получения | Подпись плательщика | Подпись получателя |
|-----|--------------|---------------|----------------|---------------------|--------------------|
| 1 | 14.06.2007 | $ 100 000.00 | 14.06.07 | | |
| 2 | 14.06.2007 | $  70 000.00 | 18.06.07 | | |
| 3 | 25.06.2007 | $  51 774.00 | 02.07.07 | | |
| 4 | 15.07.2007 | $  31 682.00 | | | |
| 5 | 15.08.2007 | $  31 682.00 | | | |
| 6 | 15.09.2007 | $  31 682.00 | | | |
| | Сумма: | $ 316 820.00 | | | |

Плательщик:       "GOLD STREAM SHIPPING CO LTD"

Получатель:       "CASTLE HOLDINGS LLC"



TRANSLATED FROM RUSSIAN INTO ENGLISH
ПЕРЕВОД С РУССКОГО ЯЗЫКА НА АНГЛИЙСКИЙ ЯЗЫК

### SCHEDULE OF PAYMENTS ACC. TO REPAIR SHEET

### REGARDING M/V "GS PARTNER"

Contract No. 2603/2007 dated April 16, 2007

at SHIPYARD "ZALIV" of Kerch

Costs according the Repair Sheet:        $316 820.00

| No. | Date of payment | Due amount | Date of payment receipt | Signature of the payer | Signature of the payment recipient |
|---|---|---|---|---|---|
| 1 | 14.06.2007 | $ 100 000.00 | 14 06.07 | Signed. | Signed. |
| 2 | 14.06.2007 | $ 70 000.00 | 18.06.07 | Signed. | Signed. |
| 3 | 25.06.2007 | $ 51 774.00 | 02.07.07 | Signed. | Signed. |
| 4 | 15.07.2007 | $ 31 682.00 | | | |
| 5 | 15.08.2007 | $ 31 682.00 | | | |
| 6 | 15.09.2007 | $ 31 682.00 | | | |
| | Amount: | $ 316 820.00 | | | |

Payer:      "GOLD STREAM SHIPPING CO. LTD"
Signed.

Recipient:    "CASTLE HOLDINGS LLC"
Signed.

ROUND SEAL:
GOLD STREAM SHIPPING CO. LTD
COMMON SEAL

ABCD  GROUP Ltd
I, Tetyana Gorbatyuk, translator of ABCD  GROUP Ltd hereby certify this translation to be true
and accurate.
April 07, 2008
Odessa

ПЕР
вул. ла /... ласька /...
м. Одеса, 65026, Україна
тел /факс: 377 035

EXHIBIT 3

# N A V I S E R V I C E  L t d.

Tlph /Fax +35952607730 , Mob.+359899162270,
E-mail: mihail2atanasov@yahoo.com

**Окончателние расходов для кмандировки на т/х „GS Partner" в городе Киоджа – Италия, 15 – 18 юля 2007года**

| | |
|---|---|
| 1. Авиобилет Варна – Венеция – Варна | - 330 еуро |
| 2. Такси – Венеция-Киоджа-Венеция | - 200 еуро |
| 3. Такси – Гост.-Судно-Гост. Х Зраза | - 120 еуро |
| 4. Гостилница - 3дня | - 264 еуро |
| 5. Дневние расходы – 4дня Х 50 еуро | - 200 еуро |
| 6. Оплачени екипажа для проверка обтяжение фундамент Валогенераторе | - 100 еуро |
| 7.Телефонные расходы | - 191 еуро |
| 8. Изготовление „Коментар к рекламирование Работы Завода...." | - 400 еуро |

Итого к 23.07.07года        - 1805 еуро

Замечание: Все располагаемые документы представлю после окомплектации в файлом.

Управител "Нависервиз ЕООД" :

/ инж. М. Атанасов

ВАРНА
23.07.2007 год.

NAVISERVICE Ltd.
Tlph/Fax +35952607730, Mob +359899162270,
E-mail: mihail2atanasov@yahoo.com

**Costs Connected with the Trip to
m/v "GS Partner" at Chioggia, Italy, 15-18 July 2007**

| | |
|---|---|
| 1. Air ticket Varna – Venice – Varna | - EUR 330 |
| 2. Taxi Venice – Chioggia – Venice | - EUR 200 |
| 3. Taxi hotel – vessel – hotel x 3 times | - EUR 120 |
| 4. Hotel – 3 days | - EUR 264 |
| 5. Daily costs – 4 days x EUR 50 | - EUR 200 |
| 6. Payment to the crew for examination of the shaft generator foundation cover | - EUR 100 |
| 7. Phone charges | - EUR 191 |
| 8. Preparing "Commentary to Works Declared by the Yard…." | - EUR 400 |

Total as of 23.07.07    - EUR 1,805

Note: All the available documents will be provided once they are bundled in a file

Managing Director
of Naviservice Ltd.:

(SIGNATURE)

-----------------------------

/engineer M. Atanasov/ (SEAL)

VARNA
23.07.2007

# N A V I S E R V I C E  L t d.

Tlph /Fax +35952607730 , Mob.+359899162270,
E-mail: mihail2atanasov@yahoo.com

### Окончательние расходов для кмандировки на т/х „GS Partner" в городе Алжесирас – Испания, 12 – 23 августа 2007года

| | | |
|---|---|---|
| 1. Авиобилет Варна – Гибралтар – Варна | - | 777 еуро |
| Корекция полета с 20 на 23 Алж.-Лондон | - | 72 еуро |
| 2.Транспортние и агентийские  расходы | - | 969,8 еуро |
| 3.Телефонные расходы | - | 94 еуро |
| 4. Дневние расходы с 12.08 по 23.08 | - | 600 еуро |
| 5. Расходы для гостильницы за 11дней | - | 1077,5 еуро |
| 8. Изготовление „Учет по наблюдении работы ремонта Валогенератора в порт Алжесирас - Испании" | - | 1200 еуро |

Итого к 23.08.07года    -    4790,3 еуро

**Замечание:** Все располагаемые документы представлю после окомплектации в файлом.

Управител "Нависервиз ЕООД" :

/ инж. М. Атанасов /

ВАРНА
27.08.2007 год.

NAVISERVICE Ltd.
Tlph/Fax +35952607730, Mob +359899162270,
E-mail: mihail2atanasov@yahoo.com

## Costs Connected with the Trip to
## m/v "GS Partner" at Algesiras, Spain, 12-23 August 2007

| | |
|---|---|
| 1. Air ticket Varna – Gibraltar – Varna | - EUR 777 |
| Flight correction 20 to 23 Alg.-London | - EUR 72 |
| 2. Transport and agency costs | - EUR 969.8 |
| 3. Phone charges | - EUR 94 |
| 4. Daily costs 12.08 till 23.08 | - EUR 600 |
| 5. Hotel – 11 days | - EUR 1,077.5 |
| 8. Preparing "Report on monitoring of the shaft generator repairs at the port of Algesiras, Spain" | - EUR 1,200 |

Total as of 23.08.07     - EUR 4,790.3

**Note:** All the available documents will be provided once they are bundled in a file

Managing Director
of Naviservice Ltd.:

(SIGNATURE)
----------------------------

/engineer M. Atanasov/ (SEAL)

VARNA
27.08.2007